## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JUAN GOMEZ-ARIAS,

        Plaintiff-Petitioner,

        vs.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT; COREY PRICE, in his
official capacity as Director of the El Paso
ICE Field Office; and DORA OROZCO, in
her official capacity as Warden, Otero
County Processing Center,

        Respondents-Defendants.

No. 20-CV-00857-MV-KK

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiff-Petitioner Juan Gomez-Arias's ("Petitioner's") Motion for a Temporary Restraining Order.  Doc. 3.  Defendants-Respondents U.S. Immigration and Customs Enforcement ("ICE"), Corey Price, and Dora Orozco ("Respondents") filed a response in opposition [Doc. 8] and Petitioner filed a reply [Doc. 9].  The Court, having considered the Motion, briefs, and relevant law, and being otherwise fully informed, finds that the Motion is not well-taken and will be **DENIED**.

### BACKGROUND

Petitioner Juan Gómez-Arias is a 60-year-old Mexican national who is presently in the custody of ICE at the Otero County Processing Center ("Otero").  Doc. 1 at ¶ 1.  He entered the United States without inspection or parole, but has been a lawful permanent resident since 1992.  Doc. 8 at 2–3.  Petitioner was convicted of attempted criminal sexual contact with a minor and attempted bribery of a witness on January 14, 2020 in New Mexico state court.  Doc. 1 at ¶ 31.

1

On March 13, Petitioner was served a Notice to Appear alleging that he was subject to removal because of his conviction, and on March 18 he was taken into ICE custody. *Id*. at ¶¶ 32–33. ICE has continued Petitioner's detention during his removal proceedings. *Id*.

COVID-19 is a highly contagious respiratory illness that has been declared a pandemic. *See* Doc. 1 at ¶¶ 37–43; *see also Essien v. Barr*, No. 20-CV-1034-WJM, 2020 WL 1974761, at *1 (D. Colo. Apr. 24, 2020) (unpublished). The virus associated with COVID-19 can cause severe health damage, and certain underlying medical conditions increase the risk of serious illness or death among those infected. *See* Doc. 1 at ¶ 41. No vaccine is available for COVID-19, which is spread by both symptomatic and asymptomatic carriers. *Id*. at ¶ 43; Doc. 1 Ex. 16 at ¶ 29. To reduce the spread of the virus, public health experts have recommended widespread measures such as social distancing and vigilant hygiene. Doc. 1 at ¶ 7.

On August 26, 2020, Petitioner filed a Complaint against ICE, Corey Price in his official capacity as Director of the El Paso Field Office, and Dora Orozco in her official capacity as Warden of Otero, requesting that this Court intervene and immediately release him from custody. Doc. 1. The Complaint alleges that Petitioner is entitled to immediate release from Otero because his age and underlying medical conditions render him particularly vulnerable to serious illness or death if he is infected with COVID-19 and because Respondents cannot prevent his exposure to the virus while in detention. *Id*. at ¶¶ 5–6. The Complaint seeks a writ of habeas corpus or injunctive relief. *Id*.

Simultaneously with the filing of the Complaint, Petitioner filed the instant Motion seeking a writ of habeas corpus or in the alternative, a temporary restraining order ("TRO") or injunction. Doc. 3. In the Motion, Petitioner asks for immediate release or for placement in a community-

based alternative to detention such as conditional release with appropriate precautionary public health measures or release to live with his wife.  Doc. 1 at 29.

In an Order entered on August 26, 2020, the Court found that Petitioner had not provided a basis for the Court to grant *ex parte* relief, and accordingly ordered Petitioner to serve copies on Respondents of the Complaint and the Motion.  Doc. 5 at 1.  The Court also set an expedited briefing schedule on the Motion.  *Id.* at 1–2.  Pursuant to the Court's request, on September 3, 2020, Respondents filed a response in opposition to Petitioner's Motion [Doc. 8] and Petitioner filed a reply to Respondents' response on September 8, 2020 [Doc. 9].

## DISCUSSION

Respondents oppose Petitioner's Motion on two bases.  As an initial matter, Respondents argue that this Court lacks jurisdiction because the federal habeas statute, 28 U.S.C. § 2241, is not an appropriate vehicle for what is essentially a challenge to Petitioner's conditions of confinement. Doc. 5 at 7–9.  Next, Respondents argue that Petitioner has not met his burden of showing that he is entitled to the temporary relief he seeks.  *Id.* at 9–17.  As set forth below, the Court finds that it has jurisdiction over Petitioner's claims under § 2241 but that he has failed to demonstrate a likelihood of success on the merits, as he must to obtain the requested TRO.

I.    Jurisdiction

A petition for a writ of habeas corpus seeks "release from unlawful physical confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973).  Habeas corpus review is available under § 2241 if an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). As release from custody is an extreme remedy, Congress has circumscribed its use by the courts. It is well-settled in the Tenth Circuit that prisoners who wish to challenge only the conditions of their confinement (as opposed to its fact or duration) must do so through civil rights lawsuits filed

pursuant to 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), rather than through federal habeas proceedings. *Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011). While a successful habeas claim leads to release of the prisoner or detainee, a successful "conditions of confinement" claim leads only to an order requiring improvements, not an order for release. *See McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811–12 (10th Cir. 1997).

Here, Respondents assert that Petitioner's allegations—namely that because the detention facility does not allow for social distancing or proper sanitation it puts him at serious risk of contracting COVID-19—state a challenge to the conditions of his confinement, rather than its fact or duration. Doc. 8 at 7–9. Petitioner responds that his challenge is not merely an attack on the conditions of his confinement, but an argument that he should not be confined *at all*. Doc. 9 at 2. Petitioner argues that "confinement of any duration under the present circumstances [includes] the extreme danger of contracting COVID-19 and the associated risk of severe illness or death in light of his medical condition." *Id.*

In the absence of controlling authority, each party finds support for its respective position in the existing case law, which "expos[es] a question that has received little or no discussion in the case law: What if confinement itself is the unconstitutional 'condition of confinement'?" *Essien*, 2020 WL 1974761, at *7. The bright-line rule categorizing conditions-of-confinement claims and fact-or-duration claims can be difficult to apply in practice, especially in response to circumstances regarding COVID-19. *See Wilson v. Williams*, No. 4:20-CV-00794, 2020 WL 1940882, at *5 (N.D. Ohio Apr. 22, 2020) (unpublished), *vacated on other grounds*, 961 F.3d 829 (6th Cir. 2020). A challenge to a dangerous prison environment may be construed as a challenge to the *conditions* of the confinement; yet because the only effective remedy to stop the spread of the virus is robust separation of individuals, and because such separation is not possible in densely populated prisons

4

without releasing a portion of the prison population, the challenge may also be construed as an action regarding the *fact or duration* of confinement. *Id*.

The Tenth Circuit has not yet directly addressed a challenge like Petitioner's that evades clear classification. Other circuit courts, however, have held that "where a petitioner claims that no set of conditions would be constitutionally sufficient[,] the claim should be construed as challenging the fact or extent, rather than the conditions, of the confinement." *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020). The Tenth Circuit has commented that the distinction between conditions of confinement claims and fact or duration claims depends on how those claims are construed: Where an objection is solely to the conditions of confinement and not to the legality of custody, it is not cognizable as a federal habeas proceeding. *See Medina v. Williams*, No. 20-1193, 2020 WL 4782302, at *2 (10th Cir. August 18, 2020) (unpublished) (citing *Standifer*, 653 F.3d at 1280). But where a Petitioner is "contending that in light of the pandemic he should be released from custody because there are *no conditions of confinement* that could adequately prevent an Eighth Amendment violation," then federal habeas proceedings may be appropriate. *Medina*, 2020 WL 4782302, at *2 (citing *Wilson*, 961 F.3d at 837–38) (emphasis in original).

In light of the COVID-19 pandemic, courts across the country have permitted immigration detainees to assert, through habeas proceedings, challenges that no conditions of confinement under current circumstances are constitutional—including courts in circuits that have held, like the Tenth Circuit, that conditions of confinements claims are not cognizable under § 2241. *See, e.g., Vazquez Barrera v. Wolf*, No. 4:20-CV-1241, 2020 WL 1904497, at *4 (S.D. Tex. Apr. 17, 2020) (unpublished) (holding that plaintiffs were challenging the *fact* of their detention and the required discussion of the *conditions* in immigration detention did not bar the habeas petition); *Malam v. Adducci*, No. 20-10829, 2020 WL 1672662, at *4 (E.D. Mich. Apr. 5, 2020), *as amended* (Apr. 6,

2020) (unpublished) (finding jurisdiction under § 2241 where petitioner asserted that there was no facility she could be incarcerated in during the COVID-19 pandemic that would be constitutional); *Bent v. Barr*, 445 F. Supp. 3d 408, 413 (N.D. Cal. 2020) (holding that a challenge to continued detention during COVID-19 challenges the validity of confinement, not merely the conditions of confinement); *Favi v. Kolitwenzew*, No. 20-CV-2087, 2020 WL 2114566, at *7 (C.D. Ill. May 4, 2020) (unpublished) ("The Court finds that Petitioner's conditions-of-confinement claim directly bears on not just his conditions of confinement, but whether the fact of his confinement is constitutional in light of the conditions caused by the COVID-19 pandemic."). A "growing majority" of courts have taken the position that such challenges are permissible. *Dada v. Witte*, No. 1:20-CV-00458, 2020 WL 5510706, at *7 n. 15 (W.D. La. Apr. 30, 2020) (unpublished) (collecting cases).

This Court is persuaded that since Petitioner claims that no set of conditions would be constitutionally sufficient [Doc. 9 at 2], his claim should be construed as challenging the fact or extent, rather than the conditions, of his confinement. This is consistent with the most on-point, controlling precedent available—the Supreme Court's decision in *Preiser*, which held that when a prisoner or detainee "is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." 411 U.S. at 500. *See also Essien*, 2020 WL 1974761, at *3 (finding that the prisoner had properly brought a COVID-19 related habeas petition in challenging his confinement itself as the unconstitutional condition of confinement). *But see Basri v. Barr*, No. 1:20-CV-00940-DDD, 2020 WL 5036063, at *2 (D. Colo. May 11, 2020) (unpublished) (holding that prisoner could not bring habeas corpus claim for similar circumstances); *Betancourt Barco v. Price*, No. 2:20-CV-350-WJ-CG, 2020 WL 2099890,

at *6 (D.N.M. May 1, 2020) (unpublished) (same).  The Court finds that Petitioner has properly brought a habeas petition and the Court has jurisdiction.

II.     Petitioner's Motion for Temporary Relief

A court may treat a temporary restraining order that is sought with notice to the adverse party as a motion for a preliminary injunction.  13 Moore's Federal Practice § 65.31; *see also* Fed. R. Civ. P. 65.  Given the nature of the relief requested and possible jurisdictional issues, the Court ordered briefing from Respondents.  Doc. 5.  Respondents received notice of Petitioner's motion for a temporary restraining order and filed a response in opposition.  Doc. 8.  Therefore, the Court will treat Petitioner's motion as a request for a preliminary injunction.

"Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal."  *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016).  To obtain a preliminary injunction, the plaintiff must establish "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest."  *Wellington v. Daza*, 795 F. App'x 605, 608 (10th Cir. 2020) (unpublished) (quoting *Diné Citizens*, 839 F.3d at 1281 (internal quotation marks omitted)).  As the government is the opposing party, the third and fourth factors (assessing the harm to the opposing party and weighing the public interest) are merged.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  These four prerequisites are not a balancing test; each must be satisfied independently.  *Diné Citizens*, 839 F.3d at 1282 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

The Tenth Circuit applies a heightened standard for "[d]isfavored preliminary injunctions"—those that do not merely preserve the relative positions of the parties.  *Free the*

*Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019). A disfavored preliminary injunction is one that either (1) mandates action rather than prohibits it, (2) changes the status quo, or (3) grants all the relief that the movant could expect from succeeding at a full trial on the merits. *Id.* In order to receive a preliminary injunction, the moving party must meet a heightened burden by making a strong showing that the factors weigh in his favor. *Id.* (citing *Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016)).[1]

Respondents evaluated Petitioner for a custody redetermination in June, August, and September and determined that release would be denied because Petitioner's past criminal history indicated that he would pose a danger to the community. *See* Doc. 1 at ¶ 35. Before that determination, Petitioner was in custody. Accordingly, the "status quo" is that Petitioner is in custody and Petitioner asks this Court to alter the status quo by requiring Respondents to release him. Similarly, Petitioner requests relief that would affirmatively require Respondents to act in a particular way—namely, by releasing him from custody. Finally, Petitioner seeks an injunction that would supply him with all the relief he could hope to win from a full trial. He asks the Court to order his release, which is the relief he would obtain after a trial on the merits. As such, Petitioner seeks an injunction that is disfavored because it alters the status quo, mandates action, and grants all the relief available from success on the merits at a full trial. Because Petitioner's request for immediate release from Otero meets three disfavored categories, the Court must closely scrutinize Petitioner's request to ensure that the exigencies of this case support granting the

---

[1] The Court recognizes that the standard applicable to a request for a disfavored injunction formerly required not only that the movant meet all four requirements, but also that the movant "make a showing that the traditional four factors weigh heavily and compellingly in [the movant's] favor," but that the heavily-and-compellingly standard "is no longer the law of the circuit." *Free the Nipple*, 916 F.3d at 797 (citation omitted).

extraordinary remedy and Petitioner must make a strong showing that each of the four factors tilts in his favor.  *Free the Nipple*, 916 F.3d at 797.

    A.    <u>Likelihood of Success on the Merits</u>

Petitioner argues that he is likely to succeed on the merits of four claims: (1) Respondents have violated his Fifth Amendment Due Process right to be protected from harm while detained, (2) Respondents have violated his Fifth Amendment Due Process right to be free from punitive conditions of detention, (3) Respondents have violated his Eighth Amendment right to be free from cruel and unusual punishment, and (4) Respondents have violated his Fifth Amendment  right to procedural due process.  Doc. 3 at 10–15.  Although Petitioner structures each of his claims separately, his first and third claims are analyzed under the same standard under Tenth Circuit precedent and will be addressed together accordingly.

    1.    <u>Due Process Right to Be Protected from Harm While Detained and Eighth Amendment Deliberate Indifference</u>

Petitioner's first claim is that Respondents have violated the Due Process Clause by failing to satisfy their duty to protect him from a severe risk of contracting COVID-19.  Doc. 3 at 10.  This parallels Petitioner's third claim that his detention violates the Eighth Amendment because both claims rely on the Eighth Amendment's deliberate indifference standard to determine whether there has been a constitutional violation.  *See, e.g., Toure v. Hott*, 458 F. Supp. 3d 387, 405 (E.D. Va. 2020) (applying the Eighth Amendment deliberate indifference test to a Fifth Amendment substantive due process claim); *Sacal-Micha v. Longoria*, 449 F. Supp. 3d 656, 664 (S.D. Tex. 2020) (citing *Baughman v. Seale*, 761 F. App'x 371 (5th Cir. 2019) (unpublished)) (applying the deliberate indifference standard to a due process claim); *Gomes v. US Dep't of Homeland Sec., Acting Sec'y*, 460 F. Supp. 3d 132 (D.N.H. May 14, 2020) (applying the deliberate indifference standard for a pretrial detainee's due process claim).

Federal immigration detention is a form of civil, not criminal, detention, and so detainees' constitutional protections are derived from the Fifth Amendment. *Zadvydas*, 533 U.S. at 690. The Fifth Amendment prohibits the federal government from depriving any person of life, liberty, or property, without due process of law. U.S. Const. amend. V. The Fifth Amendment, in conjunction with the Eighth Amendment, provides pretrial detainees the right to be protected from harm. Under the Due Process Clause and the Eighth Amendment, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cty Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989).[2] When the State affirmatively exercises its power in a manner that "so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs— *e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment" *Id*.; *accord Schwartz v. Booker*, 702 F.3d 573, 579–80 (10th Cir. 2012).

The Supreme Court has held that "reasonable safety" under *DeShaney* extends to future harms as well. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993). This includes an environment "that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Id*. Accordingly, constitutional violations may arise from "exposure of inmates to a serious, communicable disease" even if "the complaining inmate shows no serious current symptoms" and

---

[2] *DeShaney* interpreted the due process clause of the Fourteenth, rather than the Fifth, Amendment. 489 U.S. at 195. However, the *DeShaney* analysis applies equally in a suit involving the federal government, "given the Supreme Court's essentially identical interpretations of the concept under the two amendments." *Piechowicz v. United States*, 885 F.2d 1207, 1214 n.9 (4th Cir. 1989); *see also United States v. Patton*, 451 F.3d 615, 636 (10th Cir. 2006) (applying *DeShaney* to the federal government's actions).

"even though the possible infection might not affect all those exposed." *Id.*; *see also Hutto v. Finney*, 437 U.S. 678, 682–83, 687 (1978) (affirming the trial court's decision that a state prison violated the Eighth Amendment when its policies included, among other things, a daily shuffling of inmates' mattresses followed by a random redistribution, despite the fact that some inmates suffered from infectious and communicable diseases such as hepatitis and venereal disease).

Civil detainees are "entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." *Barrie v. Grand Cty., Utah*, 119 F.3d 862, 867 (10th Cir. 1997). A detainee must therefore show "deliberate indifference to serious medical needs." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (internal quotations omitted). The deliberate indifference standard for detainees has both an objective and subjective component. *Helling*, 509 U.S. at 35–37. The Eighth Amendment is violated when two elements are met: (1) objectively, "the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause," and (2) subjectively, "the official knows of and disregards an excessive risk to inmate health or safety." *Burke v. Regalado*, 935 F.3d 960, 992 (10th Cir. 2019) (citation and internal quotation marks omitted). "To prevail on a failure to protect claim, an inmate must show (1) that the conditions of his incarceration present an objective substantial risk of serious harm and (2) prison officials had subjective knowledge of the risk of harm." *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (brackets and internal quotation marks omitted). "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. Prison officials do not have an

absolute duty to protect detainees, as "neither prison officials nor municipalities can absolutely guarantee the safety of their prisoners." *Lopez v. LeMaster*, 172 F.3d 756, 75 (10th Cir. 1999).

Petitioner's third claim, that Respondents have violated the Eighth Amendment because they have been deliberately indifferent to the substantial risk of harm facing inmates and have failed to take reasonable measures to abate it [Doc. 3 at 10 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994))] is analyzed under the same framework. *See id*. at 12 (noting that deliberate indifference violates both the Eighth Amendment and the due process clause). Petitioner must prove both the objective and subjective prongs in order to prevail.

Petitioner argues that Respondents have failed to protect him from the risk of contracting COVID-19 and have further failed to provide him with proper medical care for other conditions. Doc. 3 at 10. He asserts that he is facing a substantial risk of harm because of his age and medical vulnerabilities, and that Respondents have actual knowledge of the risk of COVID-19 and have nevertheless been deliberately indifferent in violation of his due process and Eighth Amendment rights. *Id*. at 13.

First, Petitioner asserts that the conditions of detention at Otero greatly increase his risk of contracting COVID-19 because the detention center had, at the time, reported 150 cases, and because Respondents could not possibly implement the adequate social distancing and hygiene practices recommended by the U.S. Centers for Disease Control and Prevention ("CDC"). Doc. 1 at ¶ 93. Petitioner alleges that Respondents have therefore failed to meet their obligation to protect Petitioner from COVID-19 and have put him at risk of serious illness or death. *Id*. at ¶ 94.

Second, regarding Respondents' failure to provide proper medical care, Petitioner notes that he has been confined "without appropriate medication for his underlying medications," and that consequently his health has rapidly deteriorated. Doc. 1 at ¶ 15. Petitioner asserts that there

have been delays in receiving his medication, and that this caused him to fall and hit his head in the shower.  Doc. 1 Ex. 7 at ¶ 6.  Petitioner asserts that he suffered a suffered a severe stroke, and that "if they hadn't brought him to the hospital that night, he would not have been alive the next morning."  *Id*. at ¶ 22.  During hospitalization for this fall, Petitioner learned that he had diabetes, but he asserts that neither hospital staff or Otero officials informed him how to treat the illness or whether he needed to make lifestyle or dietary changes.  *Id*. at ¶ 6.  Petitioner states that in May he was taking nineteen pills a day, but that "[s]ometimes the individuals at the ICE detention facility who were supposed to provide this medication failed to do so, sometimes for days at a time."  *Id*. at ¶ 7.  As of September, Petitioner asserts that he takes fourteen pills per day for his conditions including diabetes and high blood pressure, without which he experiences swelling in his arms, dizziness, tremors, loss of balance, and increased loss of eyesight.  Doc. 9 at 4.  He also states that his medication is administered at unpredictable times, and that staff refuses to tell him what pills he is taking.  Doc. 1 Ex. 7 at ¶ 26.

Third, regarding his Eighth Amendment deliberate indifference claim, Petitioner argues that his age and medical vulnerabilities indicate that he is facing a substantial risk of harm and that despite Respondents' actual knowledge of the risk of COVID-19, they have been deliberately indifferent.  Doc. 3 at 13.  Petitioner argues that the risk of complications from contracting COVID-19 are significantly higher for him than for other detainees because he is 60 years old and has multiple underlying medical conditions.  *Id*. at 3.  Regarding his age, he asserts that the "risk for severe illness from COVID-19 increases with age, with older adults at highest risk."  *Id*. (citing Clinical Questions about COVID-19: Questions and Answers, *available at* https://www.cdc.gov/ coronavirus/2019-ncov/hcp/faq.html,  (Aug. 4, 2020)).   Regarding his underlying medical conditions, Petitioner presented evidence that he has been diagnosed with and has a past medical

history of hypertension and Type 2 diabetes.  Doc. 1 Ex. 3 at 51–52.  Petitioner argues that Respondents have actual knowledge of the substantial risk of COVID-19 and that his continued detention therefore amounts to deliberate indifference.  Doc. 3 at 13–14.

Respondents disagree with each of Petitioner's contentions.  Respondents argue that Otero has taken objectively reasonable precautionary action against COVID-19 and that there has been no deliberate indifference to the risk of harm or to Petitioner's medical needs.  Doc. 8 at 2.

First, regarding the deliberate indifference to the risk of harm, Respondents note that Otero has taken a variety of steps consistent with the CDC's guidance to mitigate the risk of COVID-19. *Id*.  Respondents list the following safety precautions that Otero has taken in order to protect detainees from COVID-19:  reducing capacity to 22% as of August 31, 2020 in order to implement social distancing during recreation, meals, and sleep; providing no-cost hygiene kits and washable face covers; making hand sanitizer and soap dispensers available; using cleaning crews to clean and disinfect housing units and common areas; screening new detainees for signs of COVID-19 and isolating those who present potential symptoms; isolating detainees with laboratory-confirmed COVID-19 cases into cohorts; having one contract physician on site for 24 hours a week and on call 24 hours a day, and one nurse-practitioner on site who is on call 24 hours a day; and encouraging staff to stay home if they feel ill.  Doc. 8 at 4–6.  Respondents assert that the evidence of precautionary measures at Otero establishes that officials at Otero are neither deliberately indifferent nor knowingly disregarding an excessive risk.  Doc. 8 at 14.

Second, regarding Petitioner's claim of failure to provide proper medical care, Respondents argue that when Petitioner was apprehended on March 9, 2020, he stated that he was in good health and was not prescribed medication.  Doc. 8 at 3.  Respondents also submit a declaration by José Renteria, Assistant Field Office Director of Otero, who testifies that on March 11, 2020, Otero's

medical staff diagnosed him with uncontrolled hypertension and prescribed him medication.  Doc. 8 Ex. A at ¶ 39.  Renteria further testifies that Petitioner fell while in custody and was promptly taken to the University Medical Center on March 16, 2020, after which he was transferred to Long Term Acute Care and continued to be seen by Otero medical staff upon his return on March 24, 2020.  *Id*. at ¶¶ 40–44.  Renteria asserts that Petitioner has been educated about his conditions and that his blood pressure and glucose are monitored regularly.  *Id*. at ¶¶ 52, 54.  Respondents also note that Petitioner's blood pressure has stabilized with the medication, which he receives on the "pill line" with close supervision.  Doc. 8 at 4.

Third, regarding Petitioner's claim of Eighth Amendment deliberate indifference, Respondents reiterate that officials have responded reasonably to the risk of detainees contracting COVID-19.  Doc. 8 at 9 (citing *Farmer*, 511 U.S. at 844).  Regarding Petitioner's age of 60, Respondents note that the CDC "formerly listed being 65 years or older as a risk factor by now simply states that 'older adults' are at greater risk.  *Id*. at 11.  Additionally, Respondents argue that although Petitioner alleges that hypertension is a risk factor, it is listed by the Centers for Disease Control and Prevention ("CDC") as a medical condition that *might* cause individuals to be at an increased risk of severe illness from COVID-19.[3]  *Id*. at 10 (emphasis added).  Respondents acknowledge that type 2 diabetes is a CDC-recognized risk factor.  *Id*. (citing CDC, People with Certain Medical Conditions, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-

---

[3] The Court notes that "evidence is rapidly mounting that high blood pressure is the most common comorbidity for persons admitted to the hospital for COVID-19 treatment." *Essien*, 2020 WL 1974761, at *6 (citing Safiya Richardson *et al.*, "Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized With COVID-19 in the New York City Area," *Journal of the American Medical Association* (online Apr. 22, 2020) at E3 (listing hypertension as the most common comorbidity, present in 3,026 of 5,700 cases studied, *i.e.*, 56.6%), *available at* https://jamanetwork.com/journals/jama/fullarticle/2765184 (HTML summary) *and* https://jamanetwork.com/journals/jama/articlepdf/2765184/jama_richardson_2020_oi_200043.pdf (PDF article)).

extra-precautions/people-with-medical-conditions.html).  However, Respondents assert that even *if* Petitioner is at a higher risk because of his age and medical conditions, he cannot show that there has been an objectively unreasonable response to minimize the spread of COVID-19 at Otero.  *Id.*

In reply, Petitioner asserts that his chance of contracting COVID-19 is extremely high because of the nature of how quickly the disease spreads, especially in detention facilities such as Otero.  Doc. 3 at 4.  According to Petitioner, Respondents cannot ensure mitigation of COVID-19 in Otero because their current policy of isolating those with symptoms of the disease is insufficient to protect other detainees from asymptomatic cases.  *Id.* at 5.  Further, while social visits at Otero are limited, the detention facility still sees a flow of staff, contractors, and vendors.  *Id.*  In support of his position, Petitioner provides declarations from multiple experts discussing the risks of COVID-19 in jails, prisons, and other ICE facilities.  Doc. 3 Ex. 1 at 22–29, Ex. 2 at 45–52, Ex. 3 at 70–78.  At the time of briefing, Respondents asserted that there were currently "no laboratory-confirmed positive COVID-19 cases" at Otero as of August 31, 2020.  Doc. 8 Ex.1 at ¶ 23.  However, ICE's COVID-19 website indicates that new cases have emerged in the weeks since: on September 18, 2020, there were 2 confirmed cases currently under isolation or monitoring, and by October 19, 2020 the number had risen to 16 confirmed cases currently under isolation or monitoring.[4]  *See* ICE Detainee Statistics, *available at* https://www/ice/gov/

---

[4] Judicial notice permits a district court "to accept a matter as proved without requiring the party to offer evidence of it." *United States v. Estep*, 760 F.2d 1060, 1063 (10th Cir. 1985) (citation and internal quotation marks omitted).  A court may "only notice matters that are verifiable with certainty."  *Id.*  The matter must be "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *United States v. Wolny*, 133 F.3d 758, 764 (10th Cir. 1998) (citing Fed. R. Evid. 201(b)).  Rule 201(b) governs judicial notice of "adjudicative facts," which are facts of a particular case, as opposed to "legislative facts," which relate to legal reasoning and the lawmaking process.  *Id.*  Here, the Court takes judicial notice of the number of current cases of COVID-19 according to official ICE statistics.

coronavirus.[5]  The Court notes that these new cases have occurred despite the precautions in place as described by Respondents.

Despite Petitioner's arguments, the Court finds that Respondents have not violated his Due Process right to be protected from harm while in custody.  In order to prevail, Petitioner must demonstrate at a minimum that the conditions at Otero are objectively unreasonable.  *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).  Although new cases of COVID-19 have emerged, Otero has taken objectively reasonable precautionary actions to prevent the spread of the disease.  Other courts in the District of New Mexico have found that Otero's precautionary measures are objectively reasonable.  For example, in *Acosta-Ortega v. United States Immigration and Customs Enforcement*, the court found that the detainee's argument that he *could* contract COVID-19 and suffer harm was insufficient in light of the following factors:  the lack of active cases at Otero; measures to social distance, screen, quarantine, and isolate detainees; the staff's use of N95 masks and PPE; and regular surface disinfection.  No. 2:20-CV-522-KWR-KBM, 2020 WL 4816373, at *9 (D.N.M. Aug. 19, 2020) (unpublished).  Similarly, in *Betancourt Barco*, the court held that Otero's numerous measures were adequate to ensure that detainees would avoid exposure to COVID-19.  2020 WL 2099890, at *9.  *See also Wilson*, 961 F.3d at 844 (finding prison officials' COVID-19 prevention measures to be a reasonable response to the risk posed by the disease, despite the fact that 59 inmates and 46 staff members had tested positive, and 6 inmates had died).

Petitioner has also failed to show that Otero officials had subjective knowledge of the risk of harm and nevertheless disregarded an excessive risk to inmate health or safety in violation of the Eighth Amendment.  As previously stated, Respondents are not tasked with guaranteeing no

---

[5] As of October 28, 2020, the number of active cases was 8, with the total of confirmed cases at Otero being 177.

injury or risk to detainees.  *See Cox v. Glanz*, 800 F.3d 1231, 1247–48 (10th Cir. 2015); *see also Hope v. Warden York Cty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (holding that the task of eliminating all risk of contracting COVID-19 "is not the constitutional standard").  Otero has taken objectively reasonable precautionary actions to prevent the spread of the COVID-19, including the aforementioned measures.  Additionally, they have not expressed deliberate indifference to Petitioner's medical needs, as he has been seen by the facility's medical staff and an outside hospital, he has been educated about his conditions, and his medications are now monitored to ensure timeliness.  Doc. 8 Ex. A at ¶¶ 40–44, 52, 54.

While there is unfortunately still a possibility that Petitioner could be exposed to COVID-19 despite Otero's precautionary measures, as indicated by the total amount of cases increasing from 150 to 177 in recent weeks, the duty of Otero officials to ensure Petitioner's safety is not absolute.  *Lopez*, 172 F.3d at 759; *Acosta-Ortega*, 2020 WL 4816373, at *6 ("The Fifth Amendment does not require detention facilities to reduce the risk of harm to zero.").  Accordingly, Petitioner is unlikely to succeed on the merits of his claim that Respondents violated his due process right to be protected from harm while detained or that Respondents violated the Eighth Amendment.

2.   Due Process Right to Be Free from Punitive Conditions of Detention

Petitioner next asserts that his detention is punitive and thus violative of the Due Process Clause.  Doc. 3 at 10.  As previously stated, federal immigration detention is a form of civil detention and must comply with the Fifth Amendment's Due Process Clause.  *Zadvydas*, 533 U.S. at 690.  The Fifth Amendment requires that detention be "nonpunitive in purpose and effect."  *Id*. Pretrial detention violates the Fifth Amendment when the conditions of confinement "amount to punishment of the detainee."  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  If a petitioner is "in

custody in violation of the Constitution or laws or treaties of the United States" under § 2241(c)(3), it is because his current civil immigration detention is punitive, in violation of the Fifth Amendment Due Process Clause. *See Essien*, 2020 WL 1974761, at *3. A detainee can prevail on a Due Process claim by showing either (1) "an expressed intent to punish on the part of detention facility officials," (2) that the restriction in question is "not rationally related to a legitimate nonpunitive governmental purpose," or (3) that the restriction in question "appears excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398. This is an objective standard. *Id*. A pretrial detainee can establish a due-process violation by "providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Colbruno v. Kessler*, 928 F.3d 1155, 1163 (10th Cir. 2019) (citing *Kingsley*, 576 U.S. at 398).

Here, in arguing that he is likely to succeed on the merits of his Due Process claim, Petitioner does not assert that Otero officials have an expressed intention of punishing him. Rather, Petitioner claims that his "[c]ontinued detention . . . poses an imminent threat to his life and is clearly punitive" because, "[d]ue to the irremediably cramped and unsanitary conditions in Otero, [he] faces a demonstrably substantial risk of contracting COVID-19, and once exposed, he is vulnerable to serious illness or death because of his age and underlying conditions." Doc. 3 at 11. Petitioner argues that his continued detention is not rationally related to "[t]he only legitimate purposes" of federal civil immigration detention, namely, to prevent flight risk, ensure attendance for legal hearings, and ensure safety of the community. *Id*. He argues that because his criminal offense was committed in 2012, more than eight and a half years ago, and he is now 60 years old, he is neither a flight risk nor a danger to the community. *Id*. at 11–12. Petitioner finally asserts that, even if his detention were rationally related to a legitimate purpose, it is excessive because

there are readily available ways to ensure his attendance at hearings and protect the community. Docs. 3 at 11, 9 at 9.

Respondents counter that there are legitimate government interests in detaining Petitioner: protecting the public and preventing him from absconding.  Doc. 9 at 14.  Further, Respondents argue that detention pending removal is not an excessive means of achieving these legitimate interests, as the Supreme Court has continually affirmed detention as "a constitutionally valid aspect of the deportation process."  *Id.* (citing *Demore v. Kim*, 538 U.S. 510, 523 (2003)).  Because of Petitioner's criminal history and aggravated felony, the decision to detain Petitioner was mandatory under 8 U.S.C. § 1226(c).  *Id.*  Respondents also note that the availability of less restrictive measures does not render Petitioner's detention excessive.  *Id*.

There is a legitimate government interest in enforcing immigration laws and detaining persons pending removal.  *Jennings v. Rodriguez*, 138 S. Ct. 830, 836, (2018).  The Supreme Court has consistently recognized that immigration detention is constitutional, citing the government's legitimate interest in protecting the public.  *See id.*; *Zadvydas*, 533 U.S. at 690–91; *Demore*, 538 U.S. at 520–23.  Petitioner's detention ensures that his removal can be completed.  Although he argues that he is the "polar opposite of a flight risk" because he is 60 years old, has medical conditions, and has local family (Doc. 1 at ¶ 19), Petitioner has a history of noncompliance with his release conditions, including telephonic check-ins.  Doc. 8 at 13.  In March 2020, Petitioner failed to report to his probation officer despite multiple verbal and written instructions to do so. *Id*. at 22 (citing Doc. 1 Ex. 11 at 82).  Petitioner also failed to attend his scheduled Sex Offender Specific Counseling.  *Id.*  Further, there is a legitimate interest in protecting the public.  On January 14, 2020, Petitioner pleaded no contest to charges of attempted criminal sexual contact with a minor under the age of 13 and attempted bribery of a witness.  Doc. 1 ¶ 31; Doc. 1 Ex. 9 at 71.

Petitioner's offense involved his 10-year-old neighbor.  Doc. 8 at 21.  Even though this conduct was more than eight years ago, the Court notes that Petitioner promptly violated the terms of his probation, testing positive for marijuana, cocaine, and alcohol, and failing to report for the aforementioned meetings with his probation officer and his Sex Offender Specific Counseling. Doc. 8 at 20–21.  Petitioner seeks release to live with his wife, but she lives at the same address where the offense against his young neighbor and the previous probation violations occurred.  Doc. 3 Ex. 4 at 95.

Accordingly, there are legitimate governmental interests in protecting the public and in enforcing immigration laws by ensuring Petitioner's removal.  Detention is also not excessive in relation to the government's purposes.  When the government is managing deportable aliens, it is not required "to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528.  Petitioner is therefore unlikely to succeed on the merits of his claim that Respondents violated his Due Process right to be free from punitive conditions of detention.

3.  Procedural Due Process Right to be Free from Continued Detention

Finally, Petitioner argues that continued detention violates his right to procedural due process.  He argues that Respondents have demonstrated a "compelling interest" in his detention but has failed to show that the detention is "narrowly focused."  Doc. 3 at 14–15 (citing *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997); *Reno v. Flores*, 507 U.S. 292, 302 (1993)).  Petitioner states that there are "narrowly focused" means of ensuring his appearance at legal proceedings that do not involve detention and the severe risk of contracting COVID-19, including supervised or conditional release.  Doc. 3 at 15.  Petitioner also cites a declaration by Lauren Brinkley-Rubinstein, Ph.D., detailing an alternatives-to-detention ICE pilot program for families with members with medical vulnerabilities and stating that "only 4% absconded and otherwise . . . there

21

was 99% attendance." Doc. 3 Ex. 2 at ¶¶ 35–40. The government's interests in minimizing flight risks and preventing danger to the community are not narrowly focused in light of the risk of lethal harm from contracting COVID-19, Petitioner argues, and there are safer ways to accomplish the government's legitimate objectives.

Respondents agree that Petitioner is entitled to procedural due process but argue that his right has not been violated. Respondents note again that "[d]etention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." Doc. 8 at 15 (citing *Demore*, 538 U.S. at 527). Because 8 U.S.C. § 1226(c) mandates detention for any alien within its scope, a bond hearing is not statutorily permitted for those detainees. *Id*. at 15–16 (citing *Olmos v. Holder*, 780 F.3d 1313, 1326 (10th Cir. 2015)). Respondents assert that even if supervised or conditional release would suffice, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id*. at 16 (citing *Demore*, 538 U.S. at 528). Respondents argue that Petitioner cannot show that due process requires an individualized determination as to the least restrictive means of ensuring appearance at removal proceedings.

The Supreme Court has explicitly approved of mandatory detention pending removal without an individualized determination as to flight risk. *Demore*, 538 U.S. at 528. Further, the government may rely on "reasonable presumptions and generic rules" without violating procedural due process. *Flores*, 507 U.S. at 313. Although supervised release, conditional release, GPS monitoring, and other methods may sufficiently ensure Petitioner's presence at legal proceedings, it is not a due process violation to instead detain the individual. Petitioner does not have a due process right to an individualized determination as to the least restrictive way to secure his

appearance at removal proceedings.  Accordingly, Petitioner is unlikely to succeed on the merits of his claim that Respondents violated his procedural due process rights.

      B.    <u>Remaining Preliminary Injunction Factors</u>

As the Court finds that Petitioner has failed to show a substantial likelihood of success on the merits, his motion for a preliminary injunction necessarily fails.  *Diné Citizens*, 839 F.3d at 1282.  For the same reason, the Court need not address the remaining elements of the TRO.  *Id*. at 1281; *see also Big O Tires, LLC v. Felix Bros., Inc.* 724 F. Supp. 2d 1107, 1121 (D. Colo. 2010) (declining to address every TRO factor because "the resolution of them will have no bearing on the outcome").

## CONCLUSION

Petitioner seeks an injunction that would alter the status quo, mandate action, and grant all the relief available from a full trial on the merits.  To obtain this extraordinary remedy, Petitioner must show a substantial likelihood of prevailing on the merits.  *Diné Citizens*, 839 F.3d at 1281. The Court is sympathetic to Petitioner's position concerning the severity of the COVID-19 pandemic and the risk of contracting the virus while in detention, but the Court is bound by the Supreme Court and Tenth Circuit's controlling law on Petitioner's constitutional claims.  Because Petitioner has failed to make a strong showing that he is likely to succeed on the merits of his claim under prevailing Tenth Circuit and Supreme Court law, he cannot prevail.

      **IT IS THEREFORE ORDERED** that Petitioner's Motion for Temporary Restraining Order [Doc. 3] is **DENIED**.

DATED this 30th day of October, 2020.

                                   _____
                                   MARTHA VAZQUEZ
                                   United States District Judge